HEARD NOVEMBER TERM, 1877.

## STACK *vs.* RAILROAD COMPANY.

In an action to recover damages for breach of a contract to pay for a certain amount of lumber, to be delivered by plaintiff to defendant at a certain place, the true and only measure of damages would be the difference between the contract and market price of the lumber which plaintiff tendered to defendant and which the latter refused to accept.

BEFORE CARPENTER, J., AT RICHLAND, MAY, 1877.

Action by William H. Stack against the Charlotte, Columbia and Augusta Railroad Company to recover damages for an alleged breach of a contract made the 29th of January, 1870, between the plaintiff, party of the first part, and defendant, party of the second part, a copy of which is as follows:

"That the party of the first part, for the consideration herein mentioned, covenants and agrees that he will, at his own charge and cost, deliver to the parties of the second part, at the landing of the party of the first part, situate about six and one-half ($6\frac{1}{2}$) miles North of Columbia, S. C., on the line of the C., C. & A. R. R., known as 'Stack's lumber yard,' one million (1,000,000) feet of lumber, to be delivered in equal proportions in the next four (4) years, at one dollar and twenty-five cents ($1.25) per hundred (100) feet for first class, and one dollar ($1.00) per hundred feet for stringers and second class, payable in sixty (60) days after month of delivery; three-fourths ($\frac{3}{4}$) of the said quantity is to be twenty (20) feet and under in length, and the other one-fourth ($\frac{1}{4}$) between twenty (20) and twenty-six (26) feet in length.

"The parties of the second part to 'put in' a turnout at the landing of the party of the first part and maintain it during this term, or longer if it be its pleasure, the party of the first part to furnish stringers and cross-ties for the construction.

"Now, in consideration of the faithful performance of the above provisions by the party of the first part, the parties of the second part promise and agree that they will pay for the same on the terms above mentioned."

The complaint further alleged:

That this plaintiff, to fulfill the terms of the said contract, incurred very great expense in the purchase of mules, wagons and other outfit necessary to such undertaking, and did on his part fulfill all and singular the covenants in said agreement contained.

That in furtherance of said agreement, and with the confident expectation that the defendant would carry out in good faith the terms of the said contract, the plaintiff discontinued all other engagements for furnishing lumber to the various contractors and builders in the city of Columbia, with whom he then did a very large business, and devoted his whole time and energy to the execution of said contract, which this plaintiff alleges was on his part fully performed.

That in the execution of the said contract this plaintiff sawed and delivered at the point on the road of the said defendants known as "Stack's lumber yard," in said agreement described, between the 12th day of February, 1870, and the 29th day of April, 1874, very large quantities of lumber, and that the defendants received thereof

about the sum of three hundred and fourteen thousand feet, for which said lumber so received from this plaintiff by the defendants the defendants paid the price stipulated in the said agreement.

And the plaintiff further alleges that after the said 29th day of April, 1874, the said defendants neglected and refused longer to fulfill and abide by the terms of the said contract, and that until that time it had failed to comply with the said contract in the following particulars:

1. That it neglected to give orders for such bills of lumber as they needed, without which the plaintiff was wholly unable to cut bills of lumber of special dimensions; and

2. They had neglected to receive such lumber as this plaintiff could, under the terms of the said contract, saw without especial order, and which he had sawed and placed at the said lumber yard, ready for delivery, or to pay him therefor the price agreed upon in said contract.

That the plaintiff has ever been prepared and anxious to perform on his part the terms of the said contract, and frequently during the continuance of said contract applied to the defendants to indicate the class and dimensions of such lumber as they required; and in the execution of the contract on his part always kept at the said lumber yard, and ready for delivery to the said defendants, a large quantity of lumber of such dimensions as was ordinarily used by the said defendants and such as he was enabled to saw without special instructions; but that the said defendants have ever neglected and refused to order the quantity of lumber contemplated in said contract, or to receive such as was sawed by the plaintiff and delivered by him at said lumber yard, except the sum of three hundred and fourteen thousand feet, hereinbefore referred to and admitted to have been received, and has in all other respects wholly failed to perform on its part the terms of said contract, to damage of the plaintiff five thousand dollars.

The answer denied that defendants ever failed and refused to fulfill or abide by the terms of the contract.

The case is as follows:

On the part of the plaintiff, evidence was introduced to prove that he was, at the time of the contract sued on, the owner of a saw mill, in large business, near Stack's Turnout, about seven miles

from Columbia, on the line of the railroad of the defendants; that, upon entering into the contract, he found it necessary, in order to be at all times ready to comply with its terms, to dismiss a large portion of his regular customers and to procure large additions to his mules, wagons and other appliances; that he received orders from the defendants for three hundred and fourteen thousand feet of lumber according to the contract and promptly filled them; that he thereafter applied for other orders, according to the terms of the contract, and the defendants failed to make such orders upon him; that the defendants, having refused further to comply with the terms of the said contract, entered into contract with other persons on the line of the said railroad, and procured the like lumber from such persons, from time to time, at prices below those stipulated in the contract with the plaintiff; that making reasonable and proper estimates of the expenses of manufacturing the lumber and delivering the same at the place designated in the contract, and of the time, care, risk and responsibility which would have been expended in completing the contract, and deducting the same from the gross amount of the prices of the lumber not ordered and accepted by the defendants, the net profits thereof would have amounted to the sum of five thousand one hundred and fifty-five dollars.

On the part of the defendants, evidence was introduced to prove that during the time specified in the contract the plaintiff had delivered to the defendants and received payment for a number of feet of sawed and hewn cross-ties exceeding the number of feet specified in the contract, with the view of showing that such cross-ties were included in the contract, and that the contract had thereby been fulfilled, and that the plaintiff had, during the time embraced in the contract, furnished divers persons with large bills of lumber.

In reply, the plaintiff introduced evidence to prove that the cross-ties were bought by the piece and not by the foot, and were purchased and paid for at prices greatly different from those specified in the contract, and were not included in the contract.

The plaintiff requested the Court to charge the jury that the measure of damages is the difference between the cash of furnishing the lumber and what the plaintiff was to receive for it under the contract, making reasonable deductions for the less time en-

gaged and for release from care, trouble, risk and responsibility attending a full execution of the contract, which was refused, and the plaintiff excepted.

The Court instructed the jury that the measure of damages was the difference between the contract price and the market price of the lumber at the time it was to be delivered to the defendants according to the contract. To which the plaintiff excepted.

The jury found a verdict for the plaintiff for the sum of seventeen hundred and fifteen dollars.

The plaintiff appealed.

*Clarke, Melton & Wingate,* for appellant.

*Rion,* contra.

April 29, 1878. The opinion of the Court was delivered by

WILLARD, C. J. This action is to recover damages for the alleged breach of the following contract between the plaintiff and the defendant, in which the plaintiff is the party of the first part and the defendants the party of the second part, namely: "That the party of the first part, for the considerations herein mentioned, covenants and agrees that he will, at his own charge and cost, deliver to the parties of the second part, at the landing of the party of the first part, situate about six and one-half (6½) miles North of Columbia, S. C., on the line of the C., C. & A. R. R., known as 'Stack's lumber yard,' one million (1,000,000) feet of lumber, to be delivered in equal proportions in next four (4) years, at one dollar and twenty-five cents ($1.25) per hundred (100) feet for first class and one dollar ($1.00) per hundred feet for stringers and second class, payable in sixty (60) days after month of delivery; three-fourths (¾) of the said quantity is to be twenty (20) feet and under in length, and the other one-fourth (¼) between twenty (20) and twenty-six (26) feet in length. The parties of the second part to 'put in' a turnout at the landing of the party of the first part and maintain it during the term, or longer, if it be its pleasure; the party of the first part to furnish stringers and cross-ties for the construction. Now, in consideration of the faithful performance of the above provisions by the party of the first part, the parties of the second part promise and agree that they will pay for the same on the terms above mentioned."

The questions presented arise exclusively on a request to charge refused by the Circuit Judge and a proposition charged by the Court, both propositions relating exclusively to the measure of damages. The plaintiff's request to charge rests on the ground that the plaintiff had been prevented from performing his part of the contract by the refusal and neglect of the defendants to give orders for lumber, and that he had lost certain profits which he might have made had he not been prevented from performing his part of the contract. He therefore claimed that he was entitled to recover the contract price for that part of the lumber not delivered and accepted by the defendants, less what it would cost to produce such lumber.

The contract called for the delivery of a fixed quantity of lumber of two classes with corresponding prices. The lengths of the lumber are sufficiently given. Nothing is said about the other dimensions of the stocks nor the kind of lumber required, nor does there appear to be any question or any uncertainty in the contract in this respect; on the contrary, it appears that so far as the lumber was delivered it was accepted without question. The only contract on the part of the defendants was to pay for the lumber as delivered according to the terms of the contract. If there was no delivery, there was no obligation to pay. The defendants were not bound to supply the plaintiff with any further instructions as to the dimensions of the lumber than those which the contract afforded, and the plaintiff was not bound to adapt the lumber to the special needs of the defendants beyond compliance with terms of the contract. As it regards "cross-ties," all that the contract called for was such as were needed for the construction of the turnout.

It therefore follows that the request to charge rested on a construction of the contract at variance with the true construction, inasmuch as any right to recover in the action must rest on the amount of lumber delivered or tendered under the contract, and not on the refusal or failure of the defendants to give orders for lumber. It does not appear that the plaintiff delivered or tendered the whole amount of lumber called for by the contract, consequently the whole sum called for by the contract could not be assumed as the basis of the request to charge. The charge, as requested, would have been erroneous if made, and consequently was properly refused.

The next point to be considered relates to the alleged error in the charge of the Circuit Judge. The charge, as made, was " that the measure of the damages was the difference between the contract price and the market price of the lumber at the time it was to be delivered to the defendants according to the contract."

Under the view that has been presented, we cannot see how the charge can be regarded as a logical deduction from the case made by the pleadings and evidence. As it assumes important matters adversely to the defendants, and they are contented with it, there is no ground to set it aside for that reason. It assumes what would appear to be the most favorable case possible for the plaintiff under the view that we take of the contract, viz., that he had delivered or tendered actual delivery of the whole amount of lumber called for by the contract to the defendants; that they had refused to accept and pay for the lumber, and on that idea gives him the difference between the market price of the lumber and the agreed contract price. If such had been the fact, and the lumber was of a marketable character, the rule of damages would have been correct as it was laid down, and it was for the jury to say, under their ruling, whether the lumber was marketable, or, in other words, whether it had a market price.

We cannot see that any rule more favorable for the plaintiff, or equally favorable, could have been laid down, nor can we conclude that the plaintiff has been in any respect prejudiced or affected otherwise than advantageously by the ruling of the Court.

The appeal must be dismissed.

*McIver*, A. J., and *Haskell*, A. J., concurred.